UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL AARON WITKIN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>A. SLOAN, et al.,<br><br>　　　　Defendants. | No. 2:16-cv-2950-JAM-EFB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a state prisoner without counsel, brings this civil rights action under 42 U.S.C. § 1983 and various California laws. Defendant Williams seeks dismissal of plaintiff's state-law claims against her. ECF No. 21. Defendant Blackwell seeks dismissal of all claims against her. *Id.* For the reasons that follow, the motion to dismiss must be granted in part and denied in part.

**I.　Background**

Plaintiff alleges that, on February 17, 2016, he submitted various case documents in an active federal civil rights case to prison officials to be mailed to Ellis Law Group, a local law firm, because he was inquiring whether the managing partner of the firm had any interest in taking over the case. ECF No. 10 at 4. He further claims that defendant Williams, the mailroom supervisor at CSP-Solano, and some as-yet unidentified defendants, opened the envelope containing the documents, removed some, urinated on the rest, and then sent them to the law office. *Id.* at 5.

1

In a motion for extension of time filed in that federal case, plaintiff revealed that his brother was an employee of Ellis Law Group. *Id.* The state deputy attorney general representing defendants in the case then contacted defendant Blackwell, a lieutenant at CSP-Solano, to tell her that plaintiff had violated the regulations concerning confidential mail. *Id.*

On March 18, 2016, Blackwell called plaintiff into her office and told him he could no longer correspond confidentially with Ellis Law Group because he was not represented by the firm. *Id.* at 5-6. She told plaintiff that the state attorney had informed her that plaintiff was a "frequent filer" of lawsuits against prison employees. *Id.* at 5. Plaintiff responded that his actions complied with California Code of Regulations, title 15, § 1341. *Id.* Blackwell allegedly "threatened to draft a false rule violation report against plaintiff if he continued to correspond with Ellis." *Id.* at 6. Blackwell then allegedly returned to plaintiff a piece of mail that was "legal in nature," which he had attempted to confidentially mail to Ellis Law Group. *Id.*

According to the complaint, plaintiff's brother, a law student and employee at Ellis Law Group, had been providing free paralegal services to plaintiff, "such as research and access to various court dockets and filings." *Id.* Plaintiff asserts that he had never mailed anything other than legal documents in active cases to Ellis Law Group. *Id.* Plaintiff claims that his "litigating capacity was significantly impaired by" Blackwell's refusal to allow him to send confidential mail to Ellis Law Group. *Id.* at 7.

The administrative appeal documents plaintiff has appended to his complaint reveal that prison authorities determined that plaintiff had been attempting to circumvent prison regulations concerning confidential legal mail by sending mail confidentially to his brother at the Ellis Law Group even though the brother was not an attorney or a licensed paralegal and the law firm did not represent plaintiff. *Id.* at 35-36. An appeals reviewer contacted the managing partner of the firm, Mark Ellis, who stated that plaintiff's brother was not a paralegal, was not providing legal services to plaintiff in connection with the firm, and that no one at the firm had provided legal services to plaintiff. *Id.*; *id.* at 46 (email from Mark Ellis stating that "neither this firm nor any of its staff including [plaintiff's brother] David are providing or have ever provided formal legal advice or services to [plaintiff] within the scope of an attorney-client relationship.").

Plaintiff alleges that Blackwell violated his First Amendment rights, violated the Bane Civil Rights Act (California Civil Code § 52.1), and negligently inflicted emotional distress in violation of California law. He alleges that Williams intentionally inflicted emotional distress in violation of California law, violated the Bane Act, and violated his First Amendment rights. Defendants seek dismissal of all but the First Amendment claim against Williams.

**II.     The Motion to Dismiss**

    **a. Legal Standard**

Defendants seek dismissal of plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). A complaint may be dismissed under that rule for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Chubb Custom Ins. Co.*, 710 F.3d at 956. Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. *Franklin v. Murphy*, 745 F.2d 1221, 1228-1229 (9th Cir. 1984).

Pro se pleadings are held to a less-stringent standard than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). However, the Court need not accept as

true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

### b. Analysis

#### i. Constitutional Claims Against Blackwell

Plaintiff raises two constitutional claims against defendant Blackwell: (1) that Blackwell unlawfully opened his mail and refused to process it as confidential and (2) that Blackwell interfered with his mail to retaliate against him for having filed lawsuits against prison employees. Defendant argues that plaintiff has failed to state a claim on both counts.

**Interference with Mail** Plaintiff alleges that Blackwell denied him his "confidential correspondence rights." ECF No. 10 at 7. This allegation implicates two separate constitutional doctrines.

First, prisoners have a First Amendment right to send and receive mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). A prison may nonetheless regulate in ways that impinge on that right if such regulation is reasonably related to legitimate penological interests, such as safety, order, and rehabilitation. *Id.* The Ninth Circuit uses the factors listed in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987) to evaluate whether a limitation on a prisoner's right to send and receive mail comports with the First Amendment. *Nordstrom v. Ryan*, 856 F.3d 1265, 1272-74 (9th Cir. 2017) (*Nordstrom II*). Those factors are: (1) whether there is a valid, rational connection between the official action and the legitimate government interest put forth to justify it; (2) whether an alternative means of exercising the right to send and receive mail remains open to the inmate; (3) what impact accommodation of the inmate's right will have on guards, other inmates, and the allocation of prison resources generally; and (4) whether there is an absence of ready alternatives to the action taken. *Id.* at 1272.

When a prison regulates outgoing mail (versus incoming mail), there must be a closer fit between the regulation and its animating purpose. *Id.* at 1273. A regulation of outgoing mail may be upheld if it furthers substantial governmental interest unrelated to the suppression of expression and is no greater than necessary to the protection of that interest. *Procunier v.*

*Martinez*, 416 U.S. 396, 413 (1974), *overruled on other grounds by Thornburgh v. Abbot*, 490 U.S. 401, 413-14 (1989). Security and order are substantial government interests. *Id.* Despite the use of the term "necessary" in *Procunier*, the law does not require that the regulation be the least restrictive means by which the interest can be furthered. *Witherow*, 52 F.3d at 265. Instead, the regulation must be "generally necessary to protect" the interest, allowing prison administrators "some latitude in anticipating the probable consequences of allowing" the speech. *Procunier*, 416 U.S. at 414.

Prisoners also have a right to confidential communications with their attorneys that is protected by the Sixth Amendment. *Nordstrom II*, 856 F.3d at 1271. Prison officials may perform a "cursory visual inspection" of an inmate's outgoing legal mail, in the inmate's presence, to make sure that it does not contain suspicious features, such as maps, guard work schedules, escape plans, or contraband. *Id.* at 1271-72; *Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014)(*Nordstrom I*). Officials may not, however, read outgoing attorney-client correspondence. *Nordstrom II*, 856 F.3d at 1271.

Here, the court must address a question not squarely dealt with by either party in the briefs – whether the First Amendment or Sixth Amendment standard applies to the facts alleged in the complaint, or whether both apply. This determination rests on whether plaintiff's mail to the Ellis Law Group was "legal mail" protected by the Sixth Amendment or ordinary mail. Plaintiff appears to believe that any mail described in California Code of Regulations, title 15, § 3141(c)(6) – which provides (and provided at the relevant time) that inmates may correspond confidentially with "[a]n attorney at law, on active status or otherwise eligible to practice law, listed with a state bar association" – must be treated confidentially under the Constitution. But that is not the law.

Rather, as the *Nordstrom* cases make clear, the right to confidentially send legal mail is meant to shield from outside view communications that are likely protected by the attorney-client privilege. *Nordstrom II*, 856 F.3d at 1271 (noting that prison officials may not read outgoing "attorney-client correspondence" because "a defendant's ability to communicate candidly and confidentially with defense counsel" is "essential to his defense and nearly sacrosanct.");

*Nordstrom I*, 762 F.3d at 910 (allowing prison officials to read inmate letters to counsel is "highly likely to inhibit the sort of candid communication that the right to counsel and the attorney-client privilege are meant to protect."). Whether a communication is protected by that privilege is a more nuanced question than whether it was simply sent to an active lawyer as required by § 3141.[1]

The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice. *In re Grand Jury Subpoenas*, 803 F.2d 493, 495 (9th Cir. 1986). In his complaint, plaintiff alleges that he was seeking representation from Mark Ellis when he mailed an envelope of documents on February 17, 2016. Taking this allegation as true, this envelope could conceivably qualify as mail protected by the attorney-client privilege. However, defendant Blackwell was not involved in the February 17 incident (in which defendant Williams and the Doe defendants allegedly urinated on plaintiff's documents).

Rather, at issue here is the incident of March 18, 2016, when Blackwell returned another mailing to plaintiff and informed him that he could no longer send confidential mail to the Ellis Law Group. Plaintiff does not allege in his complaint that this March mailing was sent to obtain representation, or to his existing attorney, or to his attorney's staff in connection with an attorney-client relationship. In fact, the documents he has appended to the complaint show the absence of any such relationship – on April 29, 2016, Mark Ellis wrote to the institutional appeals reviewer that "neither this firm nor any of its staff including David [plaintiff's brother] are providing or have ever provided formal legal advice or services to [plaintiff] within the scope of an attorney-client relationship." ECF No. 10 at 46. Thus, plaintiff has not stated facts that would support a claim that Blackwell's handling of his mail on March 18, 2016 violated his rights under the Sixth Amendment. Plaintiff has, in fact, presented evidence to the court that show that the Sixth Amendment does not apply here. *See Evans v. Vare*, 203 F. App'x 95, 97 (9th Cir. 2006) (noting

---

[1] To the extent plaintiff bases his claim on his allegation that defendants violated § 3141, the court notes that there is no private right of action for violation of the title 15 regulations. *Prock v. Warden*, No. 1:13-cv-01572-MJS (PC), 2013 U.S. Dist. LEXIS 145626, at *11-12 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if they occurred.").

that an inmate's mail to his friend was not privileged and did not enjoy Sixth Amendment protection or a presumption of confidentiality simply because the friend was a lawyer and the correspondents discussed legal matters of interest to them). The fact that plaintiff was sending legal documents to his brother does not bring the documents within the attorney-client privilege.

Thus, the court must determine whether plaintiff has stated a claim that, by opening his mail outside his presence and refusing to process it as confidential, Blackwell violated his First Amendment right to send mail. As noted above, that right can be curbed to further a substantial governmental interest unrelated to the suppression of expression in a manner no greater than necessary to the protection of that interest. *Procunier*, 416 U.S. at 413.

California Code of Regulations, title 15, § 3133(b)(3) provides, "All non-confidential inmate mail, incoming or outgoing, is subject to being read in its entirety by designated staff." Despite the broad scope of this regulation, the wholesale reading of a prisoner's outgoing mail may violate the First Amendment. *Witherow*, 52 F.3d at 266; *Martino v. Carey*, 563 F. Supp. 984, 1004-05 (D. Or. 1983). The complaint in this case, however, does not necessarily allege that Blackwell read plaintiff's mail. Instead, it alleges that, after being informed that plaintiff's mail to Ellis Law Group was not legitimately "legal mail," she opened it and determined that it did not qualify to be processed confidentially. How she made that determination is not clear.

It is implicit in *Procunier* that officials may open and inspect inmates' outgoing mail. *Altizer v. Deeds*, 191 F.3d 540, 548 (4th Cir. 1999). "Otherwise, a prison official would never know that a letter contained the very type of material that, according to the Supreme Court, could rightfully be censored; i.e., correspondence sent by an inmate that would be detrimental to the security, good order, or discipline of the institution; necessary for the protection of the public; or used to facilitate criminal activity." *Id.*

Nevertheless, it is a challenging and highly fact-sensitive question whether, under the *Turner* factors as modified by *Procunier*, Blackwell violated the First Amendment by opening plaintiff's mail, which plaintiff had marked "legal," outside his presence and either reading it or otherwise reviewing it to determine whether it qualified for confidential processing. *See Nordstrom II*, 856 F.3d at 1272-74 (performing detailed analysis of the *Turner* factors according

to evidence submitted by the parties). Analysis of such a question is better suited for summary judgment, when the court can review evidence submitted by the parties rather than simply the complaint and its attachments. *See Barrett v. Belleque*, 544 F.3d 1060, 1062 (9th Cir. 2008) ("The district court was not in a position to decide, on the pleadings, whether [the prison]'s rules 'further an important or substantial government interest,' or impose limitations 'no greater than is necessary or essential to the protection of those interests.' *Procunier*, 416 U.S. at 413. "These are questions that go to the merits of [plaintiff]'s claim, not to whether he has stated a claim."). Drawing all inferences in plaintiff's favor, the undersigned finds that the complaint states a claim against Blackwell for violation of the First Amendment. Whether that claim can withstand scrutiny under Rule 56 standards for summary judgment remain to be seen.

**Retaliation** In the Ninth Circuit, a retaliation claim has five elements. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

> First, the plaintiff must allege that the retaliated-against conduct is protected. . . . Second, the plaintiff must claim the defendant took adverse action against the plaintiff. *Id*. at 567. The adverse action need not be an independent constitutional violation. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere *threat* of harm can be an adverse action . . . ." *Brodheim*, 584 F.3d at 1270.
>
> Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. *See Pratt*, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987).
>
> Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Robinson*, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. *Id*. at 569.
>
> Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution . . . ." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, *id*., or that they were "unnecessary to the maintenance of order

8

in the institution," *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984).

*Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012). Defendant Blackwell argues that plaintiff has not stated a retaliation claim because her alleged adverse actions (opening plaintiff's mail and prohibiting him from using the confidential mail process to correspond with the Ellis Law Group) advanced the institution's legitimate correctional goals. According to Blackwell, the review of non-confidential prisoner mail furthers the institution's legitimate interest in security.

While courts sometimes take for granted that institutional security is a legitimate correctional goal, the Ninth Circuit has indicated that the question of whether a particular action advanced such a legitimate goal is a fact-based inquiry that depends on the specific facts of each case. *Barrett*, 544 F.3d at 1062. At this stage of the proceedings, the court cannot determine whether, by allegedly opening plaintiff's mail, refusing to allow him to continue using the confidential mail process to send mail to the Ellis law group, and threatening him with a rules violation report, Blackwell furthered the institution's interest in security. Plaintiff has sufficiently pleaded that Blackwell's action "did not reasonably advance a legitimate correctional goal because plaintiff's correspondence was expressly permitted by extant correctional regulations, which bind the defendants . . . ." ECF No. 10 at 7. Accordingly, he has stated a retaliation claim against Blackwell.

**Qualified Immunity** Blackwell argues that the court should afford her qualified immunity with respect to plaintiff's constitutional claims. However, her brief only addresses the mail claim and not the retaliation claim. *See* ECF No. 21-1 at 13-14. Thus, there is no basis for granting qualified immunity regarding the retaliation claim. It is noted that the contours of that right have been clearly established for years (that is, a reasonable official would have known in 2016 that taking an adverse action against a prisoner to retaliate for his lawsuits in a manner that did not advance legitimate correctional goals violates the Constitution). *See Watison*, 668 F.3d at 1114-15.

Turning to the mail claim, to determine whether to grant qualified immunity to a defendant at the pleading stage, the court must consider whether the facts alleged by plaintiff, if

9

true, show that a constitutional violation occurred, and whether the constitutional right at issue was clearly established at the time of the incident. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *see also Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009). If the alleged facts show no constitutional violation, or if the right was not clearly established, the court should grant the official qualified immunity. *Id.* In determining whether the right was clearly established, the court must ask (1) whether the law governing the official's conduct was clearly established and (2) whether a reasonable official, in the same position faced by the defendant, would understand that his conduct violated the law. *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

As concluded, above, the complaint states sufficient facts to state a claim for violation of the First Amendment's protections regarding outgoing mail. Thus, the only remaining question on qualified immunity is whether this right was clearly established in March 2016. The standard applicable to interference with a prisoner's outgoing mail has been well-established in the Ninth Circuit since at least *Witherow* in 1995. That standard requires a fact-intensive, balancing inquiry, so to determine whether a reasonable official, in the same position as Blackwell, would understand that her conduct violated the law, the court must ask (assuming all facts alleged by plaintiff to be true at this stage):

(1) Was it generally necessary (a) to open and review plaintiff's mail outside his presence, (b) to prohibit his confidential communication with Ellis Law Group, or (c) to threaten plaintiff with a rules violation report to further the prison's interest in security?

(2) Did plaintiff have other ways of exercising his right to send mail?

(3) What impact would accommodating plaintiff's right to send mail have on guards, inmates, and the allocation of prison resources generally?

(4) Was there an absence of ready alternatives to the actions taken by Blackwell?

To answer these questions requires evidence that is not before the court (e.g., what alternatives were or were not available to Blackwell?). Accordingly, her entitlement to qualified immunity must be determined at a later stage in the proceedings.

/////

/////

### ii. State Law Claims against Blackwell

**Negligent Infliction of Emotional Distress**  Defendant Blackwell argues that plaintiff has not pleaded facts sufficient to support his claim of negligent infliction of emotional distress because he has not stated facts showing serious emotional distress. The court agrees. "A claim of negligent infliction of emotional distress is not an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply." *Wong v. Jing*, 189 Cal. App. 4th 1354 (Cal. Ct. App. 2010). Where the plaintiff does not allege personal, physical injury accompanying the emotional distress, she must allege that the distress was "serious." *Id.* Serious distress is mental distress that a reasonable, normally constituted person would be unable to adequately cope with. *Id.* Plaintiff's second amended complaint contains no facts that would show serious distress stemming from Blackwell's conduct. Instead, plaintiff has simply formulaically recited that her conduct caused him "to suffer emotional distress." This allegation is insufficient to state a claim for negligent infliction of emotional distress and thus the claim should be dismissed with leave to amend.

**Bane Act**  Blackwell argues that plaintiff's claim under the Tom Bane Civil Rights Act, California Civil Code § 52.1, must be dismissed because plaintiff does not allege that Blackwell committed or threatened to commit violence against him. Again, the court agrees. That law provides a cause of action to any person whose exercise or enjoyment of rights secured by the Constitution or other federal law has been interfered with or attempted to be interfered with by threat, intimidation, or coercion. Cal. Civ. Code § 52.1(b), (c). Subsection (k) of the statute provides:

> Speech alone is not sufficient to support an action brought pursuant to subdivision (a) or (b), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat.

/////

/////

/////

11

Plaintiff's complaint contains no allegations that Blackwell's conduct communicated a threat of violence against him or his property, as the statute requires. *Cabasuela v. Browning-Ferris Indus.,* 68 Cal. App. 4th 101 (Cal. Ct. App. 1998). Accordingly, the Bane Act claim against Blackwell fails.

### iii. State Law Claims against Williams

**Intentional Infliction of Emotional Distress** The elements of a California state-law claim of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Super. Ct.*, 54 Cal. 3d 868 (Cal. 1991). The conduct must be directed at the plaintiff or occur in the presence of a plaintiff of whom the defendant is aware. *Id.* Defendant Williams claims that plaintiff's complaint fails to adequately allege that Williams' alleged conduct (urinating on plaintiff's mail) was directed at plaintiff, because the mail was sent to plaintiff's brother, not plaintiff. This argument is absurd. Defendant offers no reason why the court should conclude that urinating on a prisoner's outgoing mail is not conduct directed at that prisoner.

Williams next argues that plaintiff fails to allege that he suffered severe or extreme emotional distress. Plaintiff's allegations in this regard are: "Plaintiff suffered extreme emotional distress he would not have suffered but for their [Williams's and the Doe defendants'] intentional misconduct." ECF No. 10 at 8. The court agrees that this conclusory recital of the element of severe or extreme emotional distress, without any facts from which a person could conclude that plaintiff suffered such distress, is insufficient to state a claim for intentional infliction of emotional distress. Accordingly, the claim should be dismissed with leave to amend to provide plaintiff an opportunity to include such facts in an amended complaint.

**Bane Act** Williams argues that plaintiff's Bane Act claim against her fails because he does not adequately allege that her conduct was undertaken to threaten, intimidate, or coerce him in some way. Plaintiff alleges that Williams and the Doe defendants interfered with his right of

access to the courts by urinating on his legal documents and stealing some of them. ECF No. 10 at 8. As argued by plaintiff, a reasonable factfinder could conclude that the act of urinating on plaintiff's legal documents was done to intimidate plaintiff. Accordingly, the court rejects Williams's argument that the Bane Act claim against her fails to state a claim.

### III. Conclusion and Recommendation

For the reasons stated above, it is hereby RECOMMENDED that defendants' December 14, 2018 motion to dismiss (ECF No. 21) be granted, in part, as follows, and otherwise denied:

1. Plaintiff's claims against defendant Blackwell for negligent infliction of emotional distress and violation of the Bane Act be dismissed with leave to amend; and
2. Plaintiff's claim against defendant Williams for intentional infliction of emotional distress be dismissed with leave to amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 17, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE