UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL AARON WITKIN,<br><br>Plaintiff,<br><br>v.<br><br>A. SLOAN, et al.,<br><br>Defendants. | No. 2:16-cv-2950-JAM-EFB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in this action brought under 42 U.S.C. § 1983. His motion to proceed in forma pauperis ("IFP") pursuant 28 U.S.C. § 1915 was granted on October 3, 2017. ECF No. 7. Defendants now seek dismissal of the action, arguing that plaintiff's allegation of poverty was false. ECF No. 30-1. For the reasons that follow, the motion must be granted.

I.     Background

In his motion to proceed IFP, plaintiff declared, under penalty of perjury, that he had received no income in the prior 12 months, had no valuable property, and had no assets. ECF No. 2 at 1-2. Plaintiff signed the motion on December 5, 2016, and it was filed on December 19, 2016. *Id.* An officer from his institution of incarceration (California State Prison, Solano) signed the "certificate" portion of the IFP application, indicating that, during the prior six months, plaintiff's trust account had an average monthly balance of $0 and average monthly deposits of $0. *Id.* at 2. The attached trust account statement showed that, on December 1, 2016, plaintiff

had received into his trust account a settlement check for $4,722.77, but that the same day the entirety of the amount was debited from his account for various restitution fines and other obligations. *Id.* at 3.

Defendants present evidence that plaintiff hid assets from the court in his IFP application. First, defendants point to an August 12, 2016 settlement in *Witkin v. Swarthout*, No. 2:13-cv-01931-GEB-KJN.[1] The record in that case shows that plaintiff agreed to settle the case for $10,625. ECF No. 30-2 at 7. Plaintiff agreed to use "approximately $4,700" of the settlement amount to pay off his restitution fines and asked that the remaining money be forwarded to his mother. *Id.* at 7-8. Defendants' evidence shows that a check for $5,666.09 was issued to Elena Witkin on November 9, 2016. *Id.* at 21.

The court also takes judicial notice of the November 1, 2016 settlement conference in *Witkin v. Solis*, No. 1:12-cv-01256-AWI-MJS, in which plaintiff agreed to settle the case for $1,200. ECF No. 30-2 at 17. Defendants' evidence shows that a check for $1,200 was issued to Elena Witkin on January 27, 2017. *Id.* at 23.

Lastly, the court grants defendants' request for judicial notice of the January 27, 2017 "Notice of Proof of Availability of Funds for Plaintiff's Deposition of Dr. B. Barnett" in *Witkin v. Lotersztain*, Case No. 2:15-cv-00638-MCE-KJN. ECF No. 30-2 at 25-27. That filing shows checking and savings accounts held by "the Witkin Family Trust" at Schools Financial Credit Union holding $12,205.10 in assets and $6,200.76 in debts (a car loan and a credit card) for the statement period of December 1, 2016 through December 31, 2016.

In his verified opposition, plaintiff does not dispute any of the evidence presented by defendants. Instead, he claims it shows his honesty in the IFP application. According to plaintiff, the evidence shows that he did not have any settlement funds under his control at the time he executed the application because he had directed the $5,666.09 payment be made to his mother four months earlier. (Plaintiff does not address the $1,200 settlement payment but presumably would argue that he did not have control over these funds either, because they were paid to his

---

[1] Defendants' request for judicial notice of that and the other settlements discussed herein is granted. Fed. R. Evid. 201.

2

mother over a month after he submitted the IFP application.).  According to plaintiff, he "owed his parents about $44,000 borrowed for legal expenses related to his incarceration and wanted to start paying them back since they weren't working anymore."  ECF No. 31 at 4.

Plaintiff claims that he does not own or control the assets in the Witkin Family Trust.  *Id.* at 5.  Instead, he states that his parents were willing to loan him money (presumably from that account) to pay for the deposition in *Lotersztain*.  *Id.*

II. The Motion to Dismiss

Defendants seek dismissal of the case with prejudice under 28 U.S.C. § 1915(e)(2)(A), which provides: "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the allegation of poverty is untrue[.]"  The statute was amended in April of 1996; it had previously provided that the court "*may* dismiss the case if the allegation of poverty is untrue[.]"  28 U.S.C. § 1915(e) (1996) (emphasis added).

Section 1915(e)(2)(A) regards procedures to be followed after an individual has applied for, and been granted, permission to proceed IFP under 28 U.S.C. § 1915(a).  Section 1915(a) allows a person to proceed IFP after submitting to the court an affidavit that includes a statement of all of the person's assets and a statement that the person cannot pay the filing fee.  Additionally, a prisoner seeking to proceed IFP must also submit a certified copy of their prison trust account statement for the six months prior to the filing of the complaint.  28 U.S.C. § 1915(a)(2).  An IFP affidavit "is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life."  *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (considering the impact of the filing fee on the budget of the applicant in determining that she should have been granted IFP status).  Where the IFP applicant is a prisoner, however, courts recognize that most necessary life expenses are covered by the government.  *Kennedy v. Huibregtse*, 831 F.3d 441, 443 (7th Cir. 2016) (noting that plaintiff's entire $2000 in assets were available to him to pay for his lawsuit because the prison paid for his food, clothing, shelter, and medical care).

/////

3

In this district, plaintiffs generally seek IFP status by submitting a form application. E.D. Cal. Website, http://www.caed.uscourts.gov/caednew/index.cfm/forms/civil/ (last checked October 10, 2019). Relevant to this case, the form asks the applicant to list all income from the prior 12 months, any money in a bank account, and any other assets of value. The form concludes with the following declaration, above the applicant's signature: "I declare under penalty of perjury that the above information is true and understand that a false statement may result in a dismissal of my claims."

Plaintiff completed and signed the 2002 version of this application. ECF No. 2. (The form was revised in 2010). He averred that, in the past 12 months, he had not received any money from any source. *Id.* at 1. He further averred that he had no money in any bank account and owned no other valuable property or assets. *Id.* at 2. Plaintiff included the required certification and trust account statement. *Id.* at 2-4. The trust account statement showed that plaintiff had received income from a settlement on December 1, 2016 (four days before plaintiff signed the IFP affidavit) totaling $4,722.77 but that the entire amount had been applied to satisfy his restitution obligations on the same day. *Id.* at 3. Because the affidavit and trust statement indicated that plaintiff had no money, the court granted his request to proceed IFP. ECF No. 7. Defendants argue that this application was deliberately inaccurate, warranting dismissal under § 1915(e)(2)(A).

Courts have not been totally uniform in their application of § 1915(e)(2)(A), but a close reading of the cases applying the statute reveals consistent considerations guiding the courts' analyses. The United States Court of Appeals for the Ninth Circuit provided a starting point in *Escobedo*, 787 F.3d at 1234 n.8, stating that, to dismiss a complaint under § 1915(e)(2)(A), the court must find that the allegation of poverty was not just inaccurate, but made in bad faith. Consistent with that approach, other courts have concluded that, where the allegation of poverty is untrue but there is no showing of bad faith, the court should impose a lesser sanction than outright dismissal with prejudice, for example, revoking IFP and provide a window for the plaintiff to pay the filing fee, or dismissing without prejudice. *Camp v. Oliver*, 798 F.2d 434, 438 (11th Cir. 1986); *Mahone v. Pierce Cnty.*, No. C14-5665 BHS-KLS, 2014 U.S. Dist. LEXIS

4

170997, at *7-8 (W.D. Wash. Oct. 21, 2014); *Jacobsen v. Am. Honda Motor Co.*, No. CV 10-134-PK, 2010 U.S. Dist. LEXIS 80060, at *4-9 (recommending dismissal without prejudice where plaintiff failed to disclose income on IFP application but the evidence did not conclusively show intentional misrepresentation).

Courts that have declined to dismiss an action under § 1915(e)(2)(A) have generally based their decisions on the actual poverty of the plaintiff, despite a technical inaccuracy in the IFP application, and the absence of a showing of bad faith. *Escobedo*, 787 F.3d at 1234 n.8 (dismissal not warranted where plaintiff claimed to be paying a certain amount in "rent" despite actually owning her home, because her mortgage payment was equivalent to a payment of rent and plaintiff owned no equity in the home); *Camp*, 798 F.2d at 438-49 (reversing district court's dismissal where there was no finding that plaintiff's inaccuracy foreclosed IFP eligibility); *Hammler v. Alvarez*, No. 18-CV-326-AJB(WVG), 2019 U.S. Dist. LEXIS 22837, at *2-5 (S.D. Cal. Feb. 13, 2019) (dismissal not warranted where plaintiff failed to reveal over $1000 in settlement funds because such funds were immediately and entirely used to pay plaintiff's restitution fines); *Ruffin v. Baldwin*, No. 18-cv-1774-NJR, 2018 U.S. Dist. LEXIS 203411, at *7-10 (S.D. Ill. Nov. 30, 2018) (dismissal not warranted where plaintiff did not list over $4000 in settlement funds received in the six months preceding the application because the funds were revealed on the accompanying trust account statement (indicating no intent to conceal them) and because, by the date of the application, plaintiff had spent the money and was thus eligible for IFP); *Griffin v. Moon*, No. 1:12-cv-02034-LJO-BAM (PC), 2016 U.S. Dist. LEXIS 130812, at *7 (E.D. Cal. Sept. 23, 2016) (dismissal not warranted where plaintiff had received funds between 8 and 20 years prior to his IFP application and there was no evidence that he currently had such funds).

On the flip side, courts routinely dismiss with prejudice cases upon finding that the plaintiff has intentionally withheld information that may have disqualified the plaintiff from obtaining IFP status or has otherwise manipulated finances to make it appear that the applicant is poorer than he actually is; i.e., where the facts show that the inaccuracy on the IFP application resulted from the plaintiff's bad faith. Thus, in *Kennedy v. Huibregtse*, 831 F.3d 441, 442-44 (7th

5

Cir. 2016), the Seventh Circuit affirmed the district court's dismissal with prejudice of a complaint pursuant to § 1915(e)(2)(A) where the plaintiff failed to reveal that he had a trust account outside of prison, managed by a friend, containing about $1400 at the time of the plaintiff's IFP application. The court rejected plaintiff's claim that he did not know the balance of the account at that time and thought it had only about $10, because he spent over $600 from it just before and after the application. *Id.* at 444. Importantly, the court found that, even if the district court would have granted the plaintiff IFP status if it had known about the trust account,

> hiding assets is not a permissible alternative to seeking the judge's assistance. An applicant has to tell the truth, then argue to the judge why seemingly adverse facts (such as the trust fund in this case) are not dispositive. A litigant can't say, "I know how the judge *should* rule, so I'm entitled to conceal material information from him."

*Id.* at 443 (emphasis in original).

Similarly, the Seventh Circuit affirmed a dismissal with prejudice under § 1915(e)(2)(A) where the plaintiff had not disclosed a savings account he controlled with a balance of over $32,000 at the time of his IFP application. *David v. Wal-Mart Stores, Inc.*, 669 F. App'x 793 (7th Cir. 2016). The court rejected the plaintiff's explanation that he regarded the account as off-limits because he kept that money for his family in case of financial hardship. *Id.* at 794. The plaintiff had used funds from the account to pay $600 for a seminar and thus his claim that he could not have used the money for the filing fee was disingenuous. *Id.* And, as in *Kennedy*, the court emphasized that the plaintiff must disclose assets to the court and allow the court to assess their availability to him. *Id.* at 794.

The Second Circuit reached the same conclusion in *Vann v. Comm'r of the N.Y.C. Dep't of Corr.*, 496 F. App'x 113 (2d Cir. 2012), affirming dismissal with prejudice where the plaintiff made false statements and intentionally concealed income on his IFP application. *Id.* at 114. Plaintiff had omitted about $2000 of income from the application. *Id.* at 115-16. The court found irrelevant whether the plaintiff had spent the money before submitting his IFP application, because the statute required him "to accurately and truthfully state his financial history and assets," and he had not done so. *Id.* at 116. Moreover, the plaintiff was "an experienced litigator with extensive knowledge and familiarity with the in forma pauperis system." *Id.* This fact

supported a finding of bad faith. *Id.* at 115 ("To determine whether a plaintiff has acted in bad faith a court may consider a plaintiff's familiarity with the in forma pauperis system and history of litigation.")

In a good number of cases finding bad faith, prisoner-plaintiffs have diverted funds in the period leading up to their IFP application to others, usually family members. In *Roberts v. Beard*, No. 15cv1044-WQH-RBM, 2019 U.S. Dist. LEXIS 120744 (S.D. Cal. Aug. 2, 2019), the plaintiff had received a $3000 settlement on October 21, 2014, transferred $2000 to his sister on the same day, and used the remainder to pay outstanding court filing fees. *Id.* at *3-12. On April 14, 2015, the plaintiff submitted an IFP application indicating that he had not received any money from any other sources in the prior twelve months. *Id.* When the defendants sought dismissal under § 1915(e)(A)(2), the plaintiff claimed he had forgotten about the $3000 settlement, had not benefitted from it, and no longer had the money at the time of his application. *Id.* at *10. The court rejected these claims as not credible based on the plaintiff's extensive litigation history and familiarity with the IFP process. *Id.* at *7-11 (quoting *Vann*).

In *Cuoco v. U.S. Bureau of Prisons*, 328 F. Supp. 2d 463 (S.D.N.Y. 2004), the plaintiff sought IFP status on October 27, 1998, despite accepting settlement offers in two other cases totaling $13,500 in the prior three weeks. *Id.* at 464-65. She stated on her IFP application that she had enough money in an account in the community to pay the fee, but could not access the money because prison officials were not allowing her to receive checks. *Id.* at 464. She did not disclose the settlements. While her IFP application was pending, she asked that the settlement checks be sent to her mother, and they were. *Id.* at 465. At the same time, the plaintiff prohibited prison officials from receiving checks on her behalf. *Id.* She did not disclose to the court that she had herself created the barrier keeping checks out of her prison account. *Id.* at 466. The court found that plaintiff, who had obtained IFP status in 15 other suits, had diverted the funds to her mother's address to perpetuate a negative balance in her prison account while misrepresenting to the court that circumstances beyond her control made it unfeasible to have money deposited there.

/////

/////

*Id.* at 468-69. This manipulation of the IFP system, especially in combination with similar conduct by the plaintiff in other cases, justified dismissal of her case with prejudice. *Id.* at 468-69.

In *Richmond v. Housewright*, 101 F.R.D. 758 (D. Nev. 1984), the plaintiff did not reveal $2100 in income he had received during the 12 months preceding his IFP application for work performed as an inmate law clerk and paid directly to the plaintiff's fiancée. Finding that the plaintiff had "deliberately lied," the court dismissed the case. *Id.* at 759.

These cases reveal that the essential questions before the court are: (1) was plaintiff's allegation of poverty untrue and, if so, (2) did plaintiff submit the untrue IFP application in bad faith? The evidence submitted by defendants, and not disputed by plaintiff, shows that plaintiff was not honest in his IFP application and, in fact, that plaintiff has attempted to exploit the IFP process in this case in a manner that the court must not allow.

### A. Plaintiff's Allegations Were Untrue

Even disregarding the Witkin Family Trust, which plaintiff claims he only has access to when permitted by his parents, plaintiff received $5,666.09 in November 2016, less than a month before he averred that he had received no income from any source in the prior 12 months. That plaintiff diverted this money to his mother, for whatever reason, is irrelevant. The settlement was made with *him*, to compensate *him*, and it was at *his* direction that the money was sent to his mother. While plaintiff states that he was paying his parents back,[2] plaintiff was obligated to disclose the income and to allow the court to assess whether, including consideration of that money, he qualified for IFP status. In addition, when plaintiff claimed to have no income, he knew he would be receiving an additional $1200 settlement. Plaintiff could easily have taken that money into his trust account and paid the filing fee therefrom. Instead, he again chose to divert the money to his mother.

Plaintiff relies heavily on *Ruffin*, where the court excused the plaintiff's failure to report income received prior to his IFP application but which the plaintiff claimed to have used to repay

---

[2] The court notes that, aside from his self-serving assertions, plaintiff has submitted nothing to the court to show the existence of loans from his parents.

loans from his mother. 2018 U.S. Dist. LEXIS 203411, at *8-9. To the extent that *Ruffin* stands for the proposition that a court should excuse material omissions of income from IFP applications where the plaintiff asserts that such income was used to repay a loan, the court rejects such a proposition. Such a rule would eviscerate § 1915(e)(2)(A) by allowing plaintiffs to manipulate their financial history by diverting income to friends and family members and then claiming to have had no income at all. Instead, the court agrees with the Seventh and Second Circuits (and other cases discussed above) – the plaintiff must honestly disclose all income, including income the plaintiff has chosen to spend on loan repayment or whatever else, and allow the court to make the IFP determination based on all the facts.

Additionally, the court notes that, in *Ruffin*, the plaintiff's trust account statement, attached to his IFP application, revealed the funds that he had not disclosed in the application. *Id.* at 10. The court found this fact indicated that the plaintiff had not deliberately tried to conceal the funds. *Id.* Here, plaintiff's diversion of his settlement proceeds to his mother meant that these funds were not reflected on his trust account statement, a situation much more akin to *Cuoco* than *Ruffin*.

### B. Plaintiff Acted in Bad Faith

Plaintiff is an experienced litigant. He has sought, and obtained, IFP status in four civil rights cases and two habeas cases preceding this one (and applied for IFP status in three cases filed after). *Witkin v. Solis*, No. 1:12-cv-01256-AWI-MJS; *Witkin v. Swarthout*, No. 2:13-cv-01931-GEB-KJN; *Witkin v. Lotersztain*, No. 2:15-cv-00638-MCE-KJN; *Witkin v. M.*, No. 2:15-cv-02493-KJM-CKD; *Witkin v. Lee*, No. 2:17-cv-00232-JAM-CKD; *Witkin v. Blackwell*, No. 2:17-cv-02692-JAM-AC; *Witkin v. Lotersztain*, No. 2:19-cv-00406-TLN-KJN; *Witkin v. Brazelton*, No. 2:12-cv-00391-CMK; *Witkin v. Arnold*, 2:14-cv-1709-GEB-KJN. That experience, plus the timeline of relevant events in this action, shows plaintiff's deceptive conduct.

Plaintiff's lawsuit is based on incidents that occurred (and that plaintiff was aware of) in February and March 2016. ECF No. 10 at 4-6. Plaintiff settled the *Swarthout* matter in August of 2016. ECF No. 30-2 at 5-13. It is reasonable to assume that plaintiff, an experienced litigant who had four months to mull it over, had an idea in August 2016 that he may file suit based on the

February and March events. Nevertheless, he directed that all of the settlement proceeds beyond the amount required to satisfy his restitution obligations (an amount exceeding $5,500), be made over to his mother. In November of 2016, just one month prior to filing this action, plaintiff settled another action for $1200. Yet plaintiff mentioned neither settlement agreement in his IFP application. These facts show that plaintiff, rather than apprise the court of his true financial situation, intentionally kept funds out of his prison account (and off the court's radar) to improve his chances of obtaining IFP status. It is such conduct that § 1915(e)(2)(A) was enacted to prevent. *Vann*, 496 F. App'x at 115 ("Section 1915(e)(2)(A) serves the purpose of preventing abuse of the judicial system by weeding out the litigants who falsely understate their net worth in order to obtain in forma pauperis status when they are not entitled to that status based on their true net worth.") (internal quotation marks omitted). Plaintiff did not commit a minor misstatement or omission; he manipulated how he received substantial income in order to conceal it from the court. Accordingly, the case must be dismissed with prejudice. *David,* 669 F. App'x at 795 (dishonesty and abuse of the IFP privilege warrant dismissal with prejudice).

### III. Conclusion and Recommendation

For the reasons stated above, it is hereby RECOMMENDED that defendants' August 26, 2019 motion to dismiss (ECF No. 30) be granted and that the case be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(A).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 18, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE